█ In the Matter of Francis P. Crerand et al., Respondents. New York Shipping Association, Inc., Appellant. Louis L. Levine, as Industrial Commissioner, Appellant.— Appeals from decisions of the Unemployment Insurance Appeal Board, filed December 30, 1971 and March 20, 1972, which determined that claimants were entitled to unemployment insurance benefits. Claimants, longshoremen and members of the International Longshoremen's Association, had worked regularly for an employer at one of the New York City waterfront piers until October 25, 1968 when the pier was closed. Thereafter, through December 20 claimants sought work by "shaping-up" at a hiring hall and each obtained some work during that period of time. Although a strike by the I. L. A. had been called for October 1, 1968, an 80-day injunction was obtained and the longshoremen went back to work on October 3, continuing to operate until the evening of December 20 at which time a strike occurred. From December 21, 1968 to February 6, 1969 each of the claimants was unable to obtain any employment. The board determined that since none of the claimants had been "pre-ordered" to work after December 20, 1968, they were not employed when the strike commenced and, consequently, their unemployment was not caused by the strike. They were thus not subject to the seven-week suspension period pursuant to subdivision 1 of section 592 of the Labor Law. The hiring practices of longshoremen are unique. (See *Matter of Lessner*

[*United States Lines Co.— Catherwood*], 36 A D 2d 1, 3–4.) Once their pier was closed, claimants were required to go to the hiring hall to find work. If, after being selected by an employer from a "shape-up" at the hall, claimants were to continue on the jobsite, their names had to be posted at the particular pier involved prior to the close of each working day and also recorded through the hiring agents at the hall. They were employed on a daily basis only and none had been pre-ordered to work for the day the strike commenced. In effect, they had a mere expectancy of employment if the "shape-up" had not been prevented by the strike. (*Matter of Burger* [*Corsi*], 277 App. Div. 234, 237, affd. 303 N. Y. 654.) We find no indication in the record that the New York Shipping Association was the employer of claimants even though several fringe benefits from a collective bargaining contract between the I. L. A. and the association were derived by claimants. On the present record there is substantial evidence to support the board's determination that claimants were not, in fact, employed when the strike occurred and that the cause of their unemployment was not the industrial controversy. Decisions affirmed, without costs. Staley, Jr., J. P., Sweeney, Kane, Main and Reynolds, JJ., concur.